**[NOT YET SCHEDULED FOR ORAL ARGUMENT]**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

|  |  |
|---|---|
| SAM, Inc., *et al.*,<br><br>        *Petitioners*,<br><br>v.<br><br>Department of Justice, *et al.*,<br><br>        *Respondents*. | Nos. 26-1106,<br>26-1130,<br>26-1136 |

**REPLY IN SUPPORT OF MEDPHARM IOWA, LLC, D/B/A BUD &
MARY'S AND TRI-MOUNTAIN PURE, LLC'S MOTION TO INTERVENE**

Pursuant to Federal Rule of Appellate Procedure 27(a)(4) and District of
Columbia Circuit Rule 27(a)(4), Intervenors MedPharm Iowa, LLC, d/b/a Bud &
Mary's, and Tri-Mountain Pure, LLC ("Intervenors") respectfully submit this reply
in support of their Motion for Leave to Intervene in Support of Respondents and in
response to the Response in Opposition filed by Petitioners New Directions
Addiction Recovery Services, *et al.* ("Petitioners") on July 10, 2026.

**ARGUMENT**

## I.    Intervenors satisfy the applicable standing requirements.

Petitioners' argument that Intervenors lack standing because they seek the same relief as Respondents fails. This Court has held that "intervenors seeking relief broader than or different from that sought by existing parties must possess constitutional standing, but intervenors that seek the same relief sought by at least one existing party need not do so." *Inst. S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 764 (D.C. Cir. 2025) (cleaned up); *see also Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020). Applying that rule here, no independent Article III showing is required. Intervenors seek only to defend the Final Order and secure the same judgment Respondents seek. As a result, Intervenors need not satisfy Article III standing requirements to justify intervention. *See Little Sisters of the Poor Saint Peter & Paul Home*, 591 U.S. at 674 n.6 (explaining that the circuit court "erred by inquiring into [intervenors'] independent Article III standing" when they sought the same relief as the federal government which "clearly had standing").

Even if Article III standing were required, the Court should grant Intervenors' motion. The Final Order does not affect Intervenors in some abstract or incidental way. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (defining an injury in fact for standing purposes as "an invasion of a legally protected interest which is

2

concrete and particularized . . . not conjectural or hypothetical"). It transfers the state-licensed medical-marijuana products Intervenors sell from schedule I to schedule III, removes those operations from 21 U.S.C. § 280E's harsh tax treatment, and creates the DEA-registration pathway Intervenors have already invoked. If Petitioners succeed, Intervenors will lose the benefit of those changes, and for standing purposes, "a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 462 (2017); *Stewart v. Azar*, 313 F. Supp. 3d 237, 251 (D.D.C. 2018) ("A dollar of economic harm is an injury-in-fact for standing purposes."). These economic and regulatory injuries are sufficiently concrete to satisfy applicable injury-in-fact requirements. *See Lujan*, 504 U.S. at 560-62 ("[T]here is ordinarily little question that the action or inaction has caused [parties subject to government regulation] injury.").

The record also confirms that Intervenors' injuries are neither remote nor generalized. Bud & Mary's submitted four DEA applications and paid over $7,000 in nonrefundable application fees. Tri-Mountain submitted a DEA dispensary-registration application, paid a nonrefundable fee, and devoted substantial executive time, professional resources, and operational attention to preparing for a federally regulated schedule III marketplace. *See Czyzewski*, 580 U.S. at 462; *Stewart*, 313 F. Supp. 3d at 251. These concrete and particularized regulatory harms satisfy Article III standards. *See Lujan*, 504 U.S. at 561-62.

Petitioners' speculation argument likewise fails. The threatened loss of favorable agency action is a concrete and imminent injury sufficient to justify intervention. *New York v. EPA*, No. 17-1273 (D.C. Cir. Mar. 14, 2018) (ECF No. 1722115) (citing *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003)). That principle controls here. The petitions seek to set aside or stay the Final Order. If granted, that relief would eliminate the schedule III status and expedited registration pathway on which Intervenors have already relied. This is not speculation; it is the direct consequence of the relief Petitioners request. *IGas Holdings, Inc. v. EPA*, 146 F.4th 1126, 1135 n.3 (D.C. Cir. 2025) ("Because the Intervenors are both trade associations whose members are regulated HFC importers and producers, they have associational standing.") (citations omitted).

## II.    Existing parties cannot adequately represent Intervenors' interests.

Would-be intervenors face a "minimal" burden to show that existing representation "may be" inadequate. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Ordinarily, "governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736. This Court has explained: "A government entity . . . is charged by law with representing the public interest of its citizens," whereas industry intervenors may seek to protect "more narrow and 'parochial'" interests. *Id.* at 737 (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986)).

Nothing in this case overcomes that presumption. Petitioners argue that Intervenors have failed to identify "*some* interest that the Government will not advance." Petitioners' Opp. at 7. But Intervenors have identified such an interest, namely the concrete commercial and financial concerns that this courts in this Circuit have recognized are distinct from the Government's broader obligation to defend final agency action. *See Connecticut v. U.S. Dep't of Interior*, 344 F. Supp. 3d 279, 305 (D.D.C. 2018). Intervenors have already expended substantial resources in reliance on the Final Order, including submitting DEA registration applications, paying non-refundable fees, implementing compliance measures, and restructuring business operations to participate in the federally regulated schedule III marketplace. *See* Mot. Leave Intervene at 3–5. Those interests are precisely the type of "narrower" commercial concerns that courts have recognized as sufficient to prove inadequate representation. *See Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 640 F. Supp. 3d 59, 68–69 (D.D.C. 2022).

Recognizing this reality, this Court has held many times over that "general alignment" is not the same as adequate representation. *Crossroads Grassroots Policy v. FEC*, 788 F.3d 312, 318 (D.C. Cir. 2015); *see Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (concluding that "shared general agreement" with EPA "does not necessarily ensure agreement in all particular respects"). In *Crossroads Grassroots Policy Strategies*, for example, this Court reasoned that FEC

5

"could seek to regulate" the would-be intervenor after resolution of the case, so the intervenor "should not need to rely on a doubtful friend to represent its interests, when it can represent itself." 788 F.3d at 321. Just so here.

Nor have Intervenors "fail[ed] to demonstrate that their interests diverge from the government's in any way" simply because "[t]hey do not point to any legal argument or strategy they might pursue that will not be pursued by the government" as Petitioners contend. Petitioners' Opp. At 3. Intervenors need not preview in their motion to intervene the specific legal arguments they may advance on the merits. *See California Valley Miwok Tribe v. Salazar*, 281 F.R.D. 43, 46 n.4 (D.D.C. 2012) (concluding that addressing the arguments "going to the merits of the motion to dismiss [proposed intervenor] intends to file. . . is not necessary to the resolution of the motion to intervene"). From a practical standpoint, this is sensible. Having not seen Petitioners' briefing, Intervenors cannot reasonably be expected to identify the specific responsive legal arguments they may need to advance.  Nor can Intervenors reasonably be expected to know at this stage of the proceeding which issues the Government will choose to advance in defense of the Final Order or on what grounds. This Court should reject Petitioners' attempt to impose a requirement that is not present in Rule 15(d) or Rule 24.

Petitioners rely on *Bldg. & Const. Trades Dep't., AFL-CIO v. Reich*, 40 F.3d 1275 (D.C. Cir. 1994), but *Reich* does not help their cause. There, the Court denied

a motion to intervene after concluding that ABC, the proposed intervenor, offered no argument *in its amicus brief and at oral argument* "not also pressed" by the government. *See Reich*, 40 F.3d at 1282. This Court did not, however, require the proposed intervenor to set forth its specific arguments in its motion for leave to intervene.

Unlike the proposed intervenor in *Reich*, Intervenors here do not seek to merely echo the Government's legal arguments. Petitioners improperly attempt to transform Rule 24's requirement into one mandating that Intervenors preview the responsive legal arguments they may later advance. Neither Rule 24 nor this Court's precedent support such a requirement, and Intervenors have already demonstrated that existing parties do not adequately represent their interests.

**III.** **While intervenors seek in the alternative to participate as amici curiae, amicus participation is not an adequate substitute for intervention.**

Intervenors have requested to participate as amici curiae in the event that the Court denies their motion to intervene as party respondents, but amicus status is not an adequate substitute for intervention. It would not, for example, protect Intervenors if DOJ were to change positions, settle this case, or decline to pursue rehearing or further review in circumstances where Intervenors' interests would warrant doing so. While Petitioners have identified no prejudice that would arise from Intervenors' participation in this case as party respondents, Intervenors are happy to quell any lingering concern this Court may have regarding delay or inefficiency by committing

to a limited or joint briefing arrangement, working within the Court's existing briefing schedule, and coordinating with the Government to avoid duplicative argument.

## CONCLUSION

For the foregoing reasons, the Court should grant Intervenors' motion. If this Court denies Intervenors' motion, Intervenors request leave to participate as amici curiae.

Respectfully submitted,

/s/ *Shane Pennington*
Shane Pennington
Blank Rome LLP
717 Texas Ave., Suite 1400
Houston, TX 77002
Shane.pennington@blankrome.com

July 17, 2026

8

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies:

1. This document complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 1,570 words excluding the exempted portions, as provided in Federal Rule of Appellate Procedure 32(f). As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

2. This document complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 27(a)(5)-(6) because it was prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

/s/ *Shane Pennington*
Shane Pennington

## CERTIFICATE OF SERVICE

I certify that on this 17th day of July 2026, I filed a copy of this document using the Court's case management electronic case filing system, which will automatically serve notice of the filing on registered users of that system.

/s/ *Shane Pennington*
Shane Pennington